## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

John Douglass,

        Plaintiff,

    v.                                        Civ. No. 15-00524-MV/CG

Target Corporation, a corporation registered
to do and doing business in New Mexico,
Christopher Davidson, personally and as an
employee of Target Corp., the City of
Albuquerque and Kamil Lewandowski,
personally and as an employee of the City
of Albuquerque,

        Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Defendants Target and Christopher Davidson's Motion for Summary Judgment and Defendants City of Albuquerque and Kamil Lewandowski's Motion for Summary Judgment. (Docs. 34 and 32.) For the reasons below, the Court **GRANTS** Defendants Target and Mr. Davidson's Motion for Summary Judgment as to Counts III and Count IV with respect to assault only. (Doc. 34). The Court also **GRANTS** Defendants City of Albuquerque and Officer Lewandowski's Motion for Summary Judgment in its entirety. (Doc. 32.)

### Background

"View[ed] . . . in the light most favorable to [Mr. Douglass]" as the record allows, the facts are as follows. *See Cavanaugh v. Woods Cross City*, 625 F.3d 661, 662 (10th Cir. 2010).

On June 2, 2012, the Plaintiff, John Douglass, went to a Target store on Coors Boulevard in Albuquerque, New Mexico. That day, Defendant Christopher Davidson was working at the

store as a loss prevention specialist. Mr. Douglass tried to shoplift a small amount of merchandise. He concealed two packages of smart phone screen protectors, valued at $34.98, and walked towards the store exit. (Doc. 34-1 at 2). Mr. Davidson saw what Mr. Douglass had done. After Mr. Douglass passed the first of two sets of exit doors, Mr. Davidson and several other unidentified men tackled him to the ground. (Doc. 34-1 at 3.) Mr. Davidson and the other men pressed Mr. Douglass up against a wall, twisted his arms behind him, and handcuffed him with one arm above his shoulder and the other arm behind his back. (*Id.*) Mr. Douglass later admitted that while the men caused him pain when they twisted his arms "in a way they were not supposed to go," he did not sustain any injuries. (Doc. 34-1 at 3.) Mr. Davidson then took Mr. Douglass to a back office and double-cuffed him to a desk. (Doc. 38-1 at 14.)

Here, the parties' stories diverge. The Defendants claim that Mr. Douglass had thieved merchandise from at least two other Target stores in New Mexico (one on Lomas Boulevard in Albuquerque and another in Rio Rancho) and was the subject of a broad criminal trespass order that prohibited him from entering <u>all</u> Target stores. Mr. Douglass disputes this fact.

After detaining Mr. Douglass, Mr. Davidson called Detective Albert Velarde of the Albuquerque Police Department. (Doc. 38-7 at 6.) Detective Velarde told Mr. Davidson that Mr. Douglass could be charged with felony commercial burglary if he had been previously issued a "Criminal Trespass Notice" from Target, so long as the notice indicated that he was prohibited from "all stores." *Id.* at 7. Detective Velarde also told Mr. Davidson that he had previously arrested Mr. Douglass and issued him a "Criminal Trespass Notice" for shoplifting from another Target store on Lomas Boulevard in Albuquerque on March 24, 2012. (Doc. 34-2 at 3–4.)

Shortly after Mr. Davidson spoke with Detective Velarde by phone, Defendant Officer Kamil Lewandowski of the Albuquerque Police Department arrived at Target and spoke with

Mr. Davidson. (Doc. 34-2 at 2.) Mr. Davidson told Officer Lewandowski that Mr. Douglass had previously shoplifted at another Target location. (Doc. 34-2 at 3.) He then gave Officer Lewandowski a copy of a "Criminal Trespass Notice" issued to Mr. Douglass on April 2, 2012, for shoplifting from a Target store in the nearby town of Rio Rancho, New Mexico. (*Id.*) Mr. Davidson also told Officer Lewandowski that he had just spoken on the phone with Detective Velarde, who said to "book [Plaintiff] on commercial burglary." (Doc. 34-2 at 3; Exhibit C.)

Officer Lewandowski then stepped out of the back room and called Detective Velarde, who confirmed that he had arrested Plaintiff previously, although he did not have a copy of the "Criminal Trespass Notice" from the Lomas Boulevard location.[1] (Doc. 34-2 at 4.) However, Detective Velarde confirmed that Plaintiff could be arrested for commercial burglary based on either the Rio Rancho or the Lomas Boulevard Target "Criminal Trespass Notice." *Id.*

After speaking with Detective Velarde for approximately five minutes, Officer Lewandowski returned to the back office and requested the copy of the Rio Rancho notice, which he had left with Davidson. (Doc. 38-1 at 10.) The writing on the Rio Rancho notice was faded and hard to read except for the date and the words "(All Target Stores)," which were boldly written on the business address section in a different handwriting. (Docs. 38-1 at 9; 41-1.) The parties dispute whether Davidson altered the notice to include "(All Target Stores)." Plaintiff claims that Davidson altered the notice after learning from Detective Velarde that the notice needed to designate all store locations in order to charge the Plaintiff with felony commercial burglary instead of petty theft, a simple misdemeanor. (Doc. 38 at 2.) In support of Plaintiff's allegation is the fact that the date and "(All Target Stores)" appears to be boldly written in a different handwriting. (Docs. 38-1 at 9; 41-1.) Furthermore, the original notice later

---

[1] Detective Velarde later stated at his deposition that he did not recall telling Defendant or Officer Lewandowski that he arrested Plaintiff. (Doc. 38-7 at 6.)

subpoenaed from the Rio Rancho Police Department did not have "(All Target Stores)" written in the business address section, listing only the address of the Rio Rancho Target Store. (Doc. 38-5.) However, Davidson claims that he received the notice in that condition and did not alter it. (Doc. 34-4.) Officer Lewandowski also stated in his deposition that "[t]o the best of my knowledge, I remember [the notice] the way it is right now [with "(All Target Stores)" written on it]." (Doc. 34-2 at 7.)

Officer Lewandowski subsequently escorted Plaintiff to his squad car and arrested him for commercial burglary. (Doc. 34-2 at 12.) He informed Plaintiff that the "main reason" he was being arrested was because he had been prohibited previously from entering the Target store on Lomas Boulevard. (Doc. 34-2 at 17.) Plaintiff denied having any knowledge of being prohibited from entering the Target on Lomas Boulevard, (*id.* at 13), but admitted he received a notice pertaining to the Rio Rancho Target.[2]

Plaintiff was indicted for commercial burglary on September 25, 2012. (Doc. 32-7.) Officer Lewandowski testified to the grand jury that he placed Plaintiff under arrest for commercial burglary because "[he] had, actually, a statement from Rio Rancho that [the Plaintiff] was issued a criminal trespass, so [he] was able to prove that." (Doc. 38-8 at 2.) However, it was later determined that the "Criminal Trespass Notice" from the Rio Rancho Target could not support a commercial burglary charge against the Plaintiff, as it was issued by a city in a different county.  In addition, the Albuquerque Police Department was unable to locate a "Criminal Trespass Notice" for the Target on Lomas Boulevard. (Doc. 38-3.) Consequently, the commercial burglary charge was dismissed by *Nolle Prosequi* due to insufficient evidence on February 4, 2014. (Doc. 28-8.)

---

[2] Although he has not produced it, Plaintiff stated that the notice he received from the Target in Rio Rancho "had a very specific address [stating that he] couldn't go back to that specific Target." (Doc. 34-1 at 3.)

4

After he was arrested, Mr. Douglass sued Target Corporation (Target), Target loss prevention specialist Christopher Davidson, the City of Albuquerque, and Officer Kamil Lewandowski of the Albuquerque Police Department in a ten-count First Amended Complaint (Complaint). The Complaint was removed from the Second Judicial District Court for the State of New Mexico, County of Bernalillo, to this Court. (Doc. 1.) Mr. Douglass alleges five state tort law claims against Target and Mr. Davidson. The Complaint alleges that Davidson committed abuse of process (Count I), malicious prosecution (Count II) and fraud (Count III) by, *inter alia*, writing "(All Target Stores)" on the Rio Rancho "Criminal Trespass Notice" in order to have Plaintiff arrested for felony commercial burglary. (Doc. 1-1 at 4–6.) Plaintiff also alleges that Davidson committed assault and battery when he tackled and handcuffed Plaintiff (Count IV) and that Target Corp. is liable for the negligent hiring, retention, training, and supervision of its employees (Count V). (*Id.* at 6–7.) Defendants Target Corp. and Davidson moved for summary judgment on December 29, 2015. (Doc. 34.) Plaintiff filed his response on January 12, 2016. (Doc. 38.) Defendants Target Corp. and Davidson filed their reply on January 26, 2016. (Doc. 41.)

Plaintiff alleges five civil rights claims under 42 U.S.C. § 1983 against the City of Albuquerque and Officer Lewandowski: Malicious Prosecution (Count VI), Malicious Abuse of Process (Count VII), False Arrest (Count VIII), Detention and Confinement (Count IX), and False Arrest and Imprisonment (Count X). (*Id.* at 7–10.) Defendants City of Albuquerque and Officer Lewandowski moved for summary judgment on the basis of qualified immunity on December 29, 2015. (Doc. 32.) Mr. Douglass filed his response on January 12, 2016. (Doc. 39.) Defendants City of Albuquerque and Officer Lewandowski filed their reply on January 26, 2016. (Doc. 43.)

**LEGAL STANDARD**

## I.      Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted). The moving party need not negate the nonmoving party's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted). "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988). The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo v. Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted).

Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## II.      Qualified Immunity and Summary Judgment

As compared to his burden at the summary judgment stage against Defendants Target and Mr. Davidson, Mr. Douglass's burden at the summary judgment stage against Defendants City of Albuquerque and Officer Lewandowski is <u>substantially greater</u> because Defendants City of Albuquerque and Officer Lewandowski have raised the defense of qualified immunity—an expansive doctrine that shields government officials not only from liability, but also from the "burdens of [pretrial] litigation." *See, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("The entitlement [to qualified immunity] is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."); *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013).

Where, as here, a defendant raises the defense of qualified immunity at the summary

judgment stage, the Court's summary judgment analysis is different from the analysis described above. "'When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff, who must clear two hurdles to defeat the defendant's motion.'" *Cordova v. City of Albuquerque*, 816 F.3d 645, 655 (10th Cir. 2016) (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010)). "Qualified immunity shields federal and state officials from money damages *unless* a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (emphasis added). In other words, if a plaintiff fails to meet his or her burden on either the first or second prong of qualified immunity, the Court must grant qualified immunity to the government official(s). *Id.*

In the past, the Court was required to determine first whether the plaintiff had met the burden under the first prong of qualified immunity—that the official violated a statutory or constitutional right. Only after determining the first prong could the Court move to the second prong—whether that right was clearly established at the time of the challenged conduct. Now, however, "[t]he judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The plaintiff's burden on the second prong—to show that the right was "clearly established" at the time of the challenged conduct—is especially onerous. To meet that burden, a plaintiff must show that "'[t]he contours of [a] right [are] sufficiently clear'" such "that *every* 'reasonable official would have understood that what he [or she] [was] doing violate[d] that

8

right.'" *Al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (emphasis added).

## DISCUSSION

I.   **The Court Grants In Part and Denies In Part Defendants Davidson and Target's Motion for Summary Judgment.**

The Complaint in essence makes four claims against Defendants Davidson and Target. First, regarding malicious abuse of process (Counts I and II), summary judgment is denied because Plaintiff has raised a genuine dispute of material fact as to whether Davidson altered the Rio Rancho "Criminal Trespass Notice." Second, in regard to the claim in Count III for fraud and deceit, summary judgment is granted, as New Mexico law requires that Plaintiff detrimentally rely on the alleged misrepresentation and there is no evidence that Plaintiff relied on the allegedly altered "Criminal Trespass Notice." Third, in regard to the claim in Count IV of assault and battery, summary judgment is granted with respect to assault and denied with respect to battery, as the there is no evidence that Plaintiff suffered an apprehension of a harmful or offensive contact, but there is sufficient evidence to create a genuine dispute as to whether Plaintiff was detained in a reasonable manner. Lastly, in regard to the claim in Count V for negligent hiring and training, summary judgment is denied because there are genuine disputes as to whether Davidson altered the "Criminal Trespass Notice," whether Officer Lewandowski relied on the notice for probable cause, and whether Plaintiff was detained in a reasonable manner, all of which are material to several of the underlying tortious claims against its employee.

A.   Malicious Abuse of Process

In Counts I and II, Plaintiff alleges that Davidson committed abuse of process and malicious prosecution by altering the Rio Rancho "Criminal Trespass Notice" in order for

Plaintiff to be charged with felony commercial burglary. (Doc. 1-1 at 4–6.) Defendants make three arguments in support of summary judgment, all of which fail because there is a genuine dispute as to whether Davidson manipulated and falsified information that Officer Lewandowski relied on for probable cause to arrest Plaintiff for the felony of commercial burglary.

Defendants correctly clarify that the two once distinct torts of abuse of process and malicious prosecution have been combined in New Mexico into the single tort of malicious abuse of process. (Doc. 34 at 7.) *See DeVaney v. Thriftway Marketing Corp.,* 953 P.2d 277, 283 (N.M. 1997), *overruled on other grounds by Durham v. Guest,* 204 P.3d 19 (N.M. 2009). Therefore the Court need only address the single tort of malicious abuse of process.

The tort of malicious abuse of process is construed narrowly to protect the right of access to the courts. *See id.* at 284. In 2009, the Supreme Court of New Mexico revised the necessary elements of the tort, eliminating the requirement that the defendant initiate judicial proceedings against the plaintiff. *See Durham v. Guest*, 204 P.3d 19 (N.M. 2009). In doing so, the Supreme Court of New Mexico revised the elements of malicious abuse of process to include: (i) "the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge;" (ii) "a primary motive in the use of process to accomplish an illegitimate end;" and (iii) damages. *Id.* at 26; *see also LensCrafters, Inc. v. Kehoe*, 282 P.3d 758, 765-66 (N.M. 2012) (citing *Durham*). Consequently, Defendants' argument that they are not liable because they did not themselves initiate any charges against Plaintiff is immaterial. (Doc. 34 at 8.)

The first element, an improper use of process in a judicial proceeding, may be shown by:

(1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly actionable under the tort of abuse of process. A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural

10

> devices such as discovery, subpoenas, and attachments, or (2) indicates the
> wrongful use of proceedings, such as an extortion attempt.

*Durham,* 204 P.3d at 26. "[T]he filing of a proper complaint with probable cause, and without any overt misuse of process, will not subject a litigant to liability for malicious abuse of process, even if it is the result of a malicious motive." *DeVaney*, 953 P.2d at 285. Thus, if a court determines that probable cause existed for the underlying suit, and there is no evidence of any procedural irregularity or impropriety, summary judgment should be granted in favor of the defendant. Plaintiff does not allege, and the Court does not find, that the Defendant committed a procedural irregularity or impropriety suggesting extortion, delay, or harassment. (Doc. 1-1 at 5.) Therefore, Plaintiff's claim rests solely on the allegation that Davidson facilitated charging Plaintiff with commercial burglary without probable cause.

"[A] malicious-abuse-of-process plaintiff attempting to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim." *DeVaney*, 953 P.2d at 287; *see Fleetwood Retail Corp. of N.M. v. LeDoux,* 164 P.3d 31, 35 (N.M. 2007) ("Probable cause in the malicious abuse of process context is defined as a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury.") (internal quotation marks and citations omitted). "The existence of probable cause is a matter of law and shall be decided by the trial judge. However, the circumstances surrounding the filing of the complaint, if in dispute, must be resolved by a fact-finder." *DeVaney,* 953 P.2d at 290 (citations omitted).

First, Defendants argue that there was probable cause to have the Plaintiff arrested because he admitted to shoplifting. (Doc. 34 at 10.) In response, Plaintiff argues that there was no probable cause to charge him with commercial burglary and that Davidson manipulated the

situation by altering the Rio Rancho Notice in order for Officer Lewandowski to arrest Plaintiff for the more serious felony charge. (Doc. 38 at 16.) While Defendants obviously had probable cause to detain Plaintiff and request that he be arrested for shoplifting, Defendants must have had probable cause to request that Officer Lewandowski press charges for commercial burglary as well. In civil cases, the New Mexico Supreme Court has held that because "probable cause relates to the complaint as a whole," the plaintiff in the underlying suit need not prove probable cause for each individual count in order to be protected from a claim of malicious abuse of process. *Fleetwood*, 164 P.3d at 37. The *Fleetwood* Court reasoned that it was unfair to expose plaintiffs "who are subject to statutes of limitations and have not had the benefit of discovery when deciding what claims to pursue, to malicious abuse of process attacks based on lack of probable cause if it is later determined that one particular claim of several was not supported." *Id.* However, this decision was made "with an eye toward protecting *honest* litigants." *Id.* (emphasis added). Viewing the allegations in the light most favorable to Plaintiff, Mr. Davidson is not necessarily an innocent or honest actor seeking to vindicate his own rights, and should not be protected simply because he had probable cause to ask Officer Lewandowski that Plaintiff be charged with petty misdemeanor shoplifting.

> It would not be just to hold that the defendants must be absolved from liability simply because a small part of their suit might end in judgment for them, when the far larger part, *the equivalent of a separate claim,* has been decided against them, and where there is reason to believe that *this separate claim* has been prosecuted with malice and without probable cause.

*Holmes v. Vill. of Hoffman Estate,* 511 F.3d 673, 683 (7th Cir. 2007) (citation omitted). Nor does the reasoning in *Fleetwood* apply in a criminal matter where private citizens encourage law enforcement to press criminal charges, as they are not litigants and do not possess the same rights as civil plaintiffs that the rule was meant to protect. *See Fleetwood*, 164 P.3d at 37 ("It

would be too inhibiting of the right to seek redress in court if plaintiffs had to win on every count or be subject to a malicious abuse of process claim for any count that was unsuccessful."). In addition, the nature of the burden placed on a defendant facing criminal charges differs substantially from civil complaints. "[W]hen it comes to prosecution, the number and nature of the charges matters: the accused must investigate and prepare a defense to each charge, and as the list of charges lengthens (along with the sentence to which the accused is exposed), the cost and psychic toll of the prosecution on the accused increase." *Holmes*, 511 F.3d at 682 (discussing malicious prosecution in the context of facing separate criminal charges with and without probable cause).

Because Plaintiff alleges improper use of the criminal justice process in a manner geared to have Plaintiff charged with the felony of commercial burglary instead of petty misdemeanor shoplifting, Plaintiff's allegations must be considered separate and apart from the probable cause to charge Plaintiff with shoplifting. Therefore the Court does not accept Defendants Target and Davidson's argument that probable cause for shoplifting will preclude a claim for malicious abuse of process based on the charge of commercial burglary.

Second, Defendants Target and Davidson argue that that they are entitled to summary judgment because Plaintiff has failed to provide evidence that Mr. Davidson altered the Rio Rancho "Criminal Trespass Notice." (Doc. 34 at 9.) Whether Mr. Davidson altered the trespass notice is a material fact, because, if true, he would not have had probable cause to pursue the commercial burglary charge, as Detective Velarde told him that the notice had to designate all stores in order to charge Plaintiff with commercial burglary. In support of Defendants' argument, Davidson submitted an affidavit that he did not alter the notice. (Doc. 34-4.) In addition to this, Officer Lewandowski stated in his deposition that he remembered the notice with "(All Target

Stores)" written on it. (Doc. 34-2 at 7.) However, Plaintiff asserts that the writing on the notice

was faded, except for the words "(All Target Stores)" and the date, and that these two statements

were written in a different handwriting than the rest of the notice. (Docs. 34-2 at 7; 41-1.)

Furthermore, the notice on file subpoenaed from the Rio Rancho Police Department did not have

these alterations. (Doc. 38-5.) The record indicates that Davidson had the knowledge, after

speaking with Detective Velarde, that the "Criminal Trespass Notice" must designate "all stores"

in order to charge the Plaintiff with commercial burglary at a different Target store. (Doc. 38-7 at

7.) Davidson also had ample time to write on the notice either after his call with Detective

Velarde, before Officer Lewandowski arrived, or while Officer Lewandowski stepped out of the

back room to call Detective Velarde. (Docs. 34-2 at 2; 38-1 at 9.) Under these circumstances, the

Court finds sufficient facts showing that there is a "genuine issue for trial." *Celotex*, 477 U.S. at

324 (citation omitted).

Finally, Defendants argue that any alleged alteration to the Rio Rancho "Criminal

Trespass Notice" is irrelevant, as Officer Lewandowski relied on the notice purportedly issued

from the Target on Lomas Boulevard that Detective Velarde told him about over the phone.

(Doc. 34 at 10.) However, viewing the evidence in the light most favorable to Plaintiff, and

notwithstanding the shifted standard the Court applies to the defense of qualified immunity,

*infra*, there is a genuine dispute as to whether and to what extent Officer Lewandowski relied on

the Rio Rancho Notice. While Officer Lewandowski did write in the criminal complaint that the

"main reason" the Plaintiff was being arrested was because of the Lomas Boulevard Target

trespass, (Doc. 34-2 at 17), he later testified before the grand jury that he arrested Plaintiff

because he had "a statement from Rio Rancho that [Plaintiff] was issued a criminal trespass, so

[Officer Lewandowski] was able to prove that." (Doc. 38-8 at 2.) The Court finds that these

contradictory statements are sufficient to create a genuine dispute as to the role of the Rio Rancho "Criminal Trespass Notice" in charging Plaintiff with commercial burglary.

While the Court recognizes that the tort of malicious abuse of process is disfavored and narrowly construed to protect the right of access to the courts, *see DeVaney,* 953 P.2d at 284, summary judgment is inappropriate when the factual circumstances surrounding the filing of criminal charges are in dispute. *Id.* at 290. Here, it is unclear whether Davidson manipulated evidence that Officer Lewandowski relied on as probable cause to charge Plaintiff with commercial burglary. Because there exists a genuine dispute as to whether Davidson altered the Rio Rancho Notice and if Officer Lewandowski relied on the notice in his decision to charge Plaintiff with commercial burglary, summary judgment is denied for Counts I and II of the Complaint, which shall be consolidated into a single count of Malicious Abuse of Process.

B. Fraud and Deceit

Count III of the Complaint alleges that Davidson committed fraud and deceit by altering the Rio Rancho "Criminal Trespass Notice" and misrepresenting that Plaintiff was given a "Criminal Trespass Notice" on March 24, 2012 for shoplifting from the Target on Lomas Boulevard. (Doc. 1-1 at 5.) The torts of fraud and deceit are synonymous under New Mexico law. *See Ledbetter v. Webb*, 711 P.2d 874, 879 (N.M. 1985) (equating fraud and deceit); *Maxey v. Quintana*, 499 P.2d 356, 359 (N.M. Ct. of App. 1972) (same).

Under New Mexico law, the elements of fraud include "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." *Cain v. Champion Window Co. of Albuquerque, LLC,* 164 P.3d 90, 97 (N.M. Ct. App. 2007). All of these elements

must be proven by clear and convincing evidence. *See* UJI 13–1633 NMRA.

Regarding the alleged shoplifting incident at the store on Lomas Boulevard, Defendants correctly state, and Plaintiff does not dispute, that there is no evidence that Davidson had knowledge that Plaintiff had not actually been issued a "Criminal Trespass Notice" from the Target on Lomas Boulevard. (Doc. 34 at 11.) Rather, the evidence suggests that Davidson was merely repeating what Detective Velarde told him, and Plaintiff has not demonstrated how it would be reckless to relay the information to Officer Lewandowski. (Doc. 34-2 at 4.) Therefore Defendant cannot be held liable for these statements, as "either knowledge of the falsity of the representation or recklessness on the part of the [defendant]" is a necessary element of fraud. *Cain,* 164 P.3d at 97. Accordingly, summary judgment must be granted as to Count III.

Regarding the alleged incident at the Rio Rancho store, Defendants argue that they are entitled to summary judgment because Plaintiff has not proven that Davidson altered the Rio Rancho "Criminal Trespass Notice," or that Officer Lewandowski relied on the notice. (Docs. 34 at 11; 41 at 11.) However, as discussed above, Plaintiff has come forth with sufficient evidence to create a genuine dispute as to whether the notice was altered by Davidson. Defendants have also failed to establish that Officer Lewandowski did not rely on the notice. Therefore summary judgment is not appropriate based upon these arguments.

Defendants next assert that Plaintiff's claim for fraud and deceit fails as a matter of law because if anyone relied on the alleged misrepresentation, it was Officer Lewandowski and not Plaintiff and that New Mexico law requires reliance on the part of the plaintiff. [3] (Doc. 34 at 12.) Plaintiff argues that he need only be "in the class of persons" that the Defendant meant to influence with the fraudulent conduct. (Doc. 38 at 19.) In support of this argument, Plaintiff cites

---

[3] Defendants maintain that Officer Lewandowski did not rely on the Rio Rancho "No Trespass Notice," but it is assumed for purposes of discussion.

to *Citizens Bank v. C & H Const. & Paving Co.*, 552 P.2d 796 (N.M. Ct. of App. 1976). (Doc. 38 at 18.) In *Citizens Bank*, the New Mexico Court of Appeals held that the plaintiff could recover for damages proximately caused by a fraudulent misrepresentation made by the defendant, despite the fact that plaintiff did not rely on or even know of the defendant's statements. *Citizens Bank*, 552 P.2d at 801. However, the Court is unable to find that Plaintiff's theory based on a forty-year-old New Mexico Court of Appeals opinion has been codified in New Mexico law. The New Mexico Supreme Court most recently reiterated the elements of fraud as:

> (1) a representation of fact was made (either by commission or by omission) that was not true, (2) the defendant made the representation knowingly or recklessly, (3) the representation was made with the intent to induce *the plaintiff* to rely upon it, and (4) that *the plaintiff* relied on the representation.

*Encinias v. Whitener Law Firm, P.A.*, 310 P.3d 611, 620 (N.M. 2013) (emphasis added). This language closely follows New Mexico's Uniform Jury Instructions requiring that the party claiming fraud rely on the fraudulent misrepresentation. *See* UJI 13-1633 NMRA. Even assuming *arguendo* that Davidson altered the Rio Rancho "Criminal Trespass Notice," there is no evidence that the Plaintiff relied on the allegedly altered notice, as he consistently denied that the notice he received from the Rio Rancho Target barred him from all Target stores. (Doc. 34-1 at 3; Exhibit C.) It was Officer Lewandowski who would have relied on the alleged misrepresentation, as he had the apparent authority to arrest the Plaintiff for felony commercial burglary based on the Rio Rancho "Criminal Trespass Notice" as long as it applied to all Target stores. Consequently, as Plaintiff has failed to demonstrate that he relied on the allegedly altered notice, Plaintiff cannot establish an essential element and his claim must fail.

C. Assault and Battery

Count IV alleges that Davidson and several other unidentified Target employees committed assault and battery when they tackled and handcuffed Plaintiff as he was leaving the

store. (Doc. 1-1 at 6.) Although New Mexico does not clearly define the elements of tortious assault, *see* UJI 13-1624 NMRA Committee Commentary, generally assault requires an "act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery." *Baca v. Velez*, 833 P.2d 1194, 1196 (N.M. Ct. of App. 1992); *Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1208 (10th Cir. 2006). Defendants argue first, and Plaintiff does not dispute, that there is insufficient evidence to prove assault, as Plaintiff was detained "without warning." (Doc. 34.) Plaintiff does not offer any evidence that he believed he was in danger of receiving an imminent battery before the Target employees "all of a sudden" apprehended him. (Doc. 34-1 at 3.) Therefore Plaintiff's claim for assault fails as a matter of law, as he has failed to establish an essential element of his claim.

With respect to battery, Defendants argue that Plaintiff's battery claim fails because he did not sustain any injuries. (Docs. 34 at 13; 34-1 at 3.) Under New Mexico law, generally a party is liable for battery if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results." *State v. Ortega*, 827 P.2d 152, 155 (N.M. Ct. of App. 1992) (quoting Restatement (Second) of Torts § 18 (Am. Law Inst. 1965). Even assuming *arguendo* that the Plaintiff must have suffered a "harmful" contact, (Doc. 34 at 13), the Restatement defines bodily harm as "any physical impairment of the condition of another's body, or *physical pain* or illness." Restatement (Second) of Torts § 15 (emphasis added). While Plaintiff admitted that he did not sustain any injuries during the confrontation, he did state that it was "painful." (Doc. 34-1 at 3.) It is undisputed that Plaintiff was tackled by Davidson and handcuffed with one arm over his shoulder to his other arm behind his back. *Id.* Officer Lewandowski stated that he had never seen someone handcuffed that way

before in his four-and-a-half years of doing shoplifting investigations. (Doc. 38-1 at 14.) Because of the way Plaintiff was tackled and handcuffed, the Court believes that there are sufficient facts for a jury to find that he suffered a harmful contact, and therefore Plaintiff's claim for battery must survive summary judgment.

Defendants assert that they are protected from liability under New Mexico's Reasonable Detention statute, (Doc. 34 at 14), which states:

> "[i]f any . . . merchant has probable cause for believing that a person has willfully taken possession of any merchandise with the intention of converting it without paying for it, or has willfully concealed merchandise, and that he can recover the merchandise by detaining the person or taking him into custody, the . . . merchant may, for the purpose of attempting to affect a recovery of the merchandise, take the person into custody and detain him in a *reasonable manner* for a reasonable time.  Such taking into custody or detention shall not subject the . . . merchant to any criminal or civil liability."

N.M.S.A. 1978 § 30-16-23 (1965) (emphasis added).  While Section 30-16-23 grants shopkeepers a conditional privilege to detain suspected shoplifters, the apprehension of the shoplifter must be made in a reasonable manner. *See Holguin v. Sally Beauty Supply Inc.*, 264 P.3d 732, 733 (N.M. Ct. of App. 2011). The Court finds that Plaintiff has come forward with sufficient facts to create a genuine dispute as to whether he was detained in a reasonable manner. As noted above, the record indicates that Davidson and other Target employees "all of a sudden" grabbed Plaintiff without identifying themselves, pressed him up against the wall, twisted his arms behind him "in a way they were not supposed to go," and handcuffed him with one arm above his shoulder and the other arm behind his back. (Doc. 34-1 at 2.) Officer Lewandowski's statement that he had never seen someone handcuffed that way before in his four-and-a-half years of doing shoplifting investigations also lends support to Plaintiff's claim that he was detained in an unreasonable manner. (Doc. 38-1 at 14.) Thus, whether Defendant detained Plaintiff in a reasonable manner remains in dispute, and summary judgment on Count IV is

denied.

    D.  <u>Negligent Hiring, Retention, Training and Supervision</u>

Count V alleges that Target failed to properly train and supervise its employee, Davidson. Target's sole argument is that it cannot be found negligent for the actions of its employee if the employee is not guilty of any tortious acts. (Doc. 34 at 14.) However, as discussed above, there are genuine disputes of material facts that preclude summary judgment on several of the underlying claims. Therefore summary judgment on Count V is denied.

**II.    The Court Grants Defendants City of Albuquerque and Kamil Lewandowski's Motion for Summary Judgment.**

The Complaint makes five civil rights claims against Defendants City of Albuquerque and Kamil Lewandowski—all of which are predicated on the allegation that Officer Lewandowski lacked probable cause to arrest Mr. Douglass. The parties agree that Officer Lewandowski had probable cause to arrest Mr. Douglass for shoplifting. Indeed, Mr. Douglass admitted that he shoplifted. Their dispute, then, turns on whether Officer Lewandowski needed probable cause to arrest Mr. Douglass for commercial burglary—the crime for which Officer Lewandowski apparently thought he was arresting Mr. Douglass. As discussed below, unlike the analysis above, the Court does not need to reach this issue to resolve the question of qualified immunity in favor of the Defendants.

The Court grants summary judgment on the basis of qualified immunity, dismissing all claims against Defendants City of Albuquerque and Officer Lewandowski, including Malicious Prosecution and Malicious Abuse of Process, False Arrest, Detention and Confinement, and False Arrest and Imprisonment (Counts VI-X).

**A. Mr. Douglass's Allegations Against Defendants City of Albuquerque and Officer Lewandowski**

In Counts VI and VII, Mr. Douglass alleges that Officer Lewandowski was acting under color of state law and in the course and scope of his employment with the City of Albuquerque, when Officer Lewandowski "initiated felony charges against [Mr. Douglass] without probable cause because he failed to adequately investigate the case" against Mr. Douglass. (Doc. 1-1 ¶¶ 53–54, 57.) In doing so, Officer Lewandowski allegedly violated Mr. Douglass's "rights, privileges, or immunities secured by the United States Constitution or by federal law[.]" (*Id.* ¶ 55.) Mr. Douglass also alleges that Defendants City of Albuquerque and Officer Lewandowski "initiated felony charges by arresting [Mr. Douglass] on June 2, 2012, filing a criminal complaint [against Mr. Douglass] on that day[,] and testifying at the Grand Jury[, resulting] in the September 26, 2012 felony indictment [against Mr. Douglass] for Commercial Burglary." (*Id.* ¶ 56.) Further, Mr. Douglass alleges that "Officer Lewandowski actively participated in misusing the judicial process to prosecute [Mr. Douglass] for the felony of commercial burglary" and "Officer Lewandowski's primary motive" in doing so "was to convict [Mr. Douglass] of commercial burglary, a felony." (*Id.* ¶¶ 61–62.) The felony charges against Mr. Douglass were "terminated in [his] favor on February 4, 2014" after "the indictment was dismissed 'due to insufficient evidence.'" (*Id.* ¶ 58.)

**B. Defendants City of Albuquerque and Officer Lewandowski's Arguments in Support of Qualified Immunity**

Defendants City of Albuquerque and Officer Lewandowski urge that Officer Lewandowski did in fact have probable cause to arrest Mr. Douglass for commercial burglary. (Doc. 32 at 7–10). In support of their argument that Officer Lewandowski was justified in arresting Mr. Douglass for commercial burglary, Defendants describe several undisputed facts.

First, Defendants note that Mr. Davidson told Officer Lewandowski that "he had observed [Mr. Douglass] shoplifting"—specifically that Mr. Douglass "concealed the merchandise and started to walk out of the store, passing all points of sale." (Doc. 32 at 8, citing Undisputed Facts No. 3, 4, and 7.)

After Officer Lewandowski read Mr. Douglass his Miranda rights, Mr. Douglass did not deny that he had shoplifted. (*Id.*, citing Undisputed Fact No. 8.) "[Mr.] Davidson told Officer Lewandowski that [Mr. Douglass] had been given a Criminal Trespass Notice for shoplifting previously at a Rio Rancho Target." (*Id.*, citing Undisputed Fact No. 13.)

Officer Lewandowski then saw the Criminal Trespass Notification from the Rio Rancho Target—which is now alleged to have been altered by Mr. Davidson. Specifically, Mr. Douglass alleges that Mr. Davidson added the words "All Target Stores" to the Criminal Trespass Notice. (*Id.* at 9, citing Undisputed Fact No. 15.)

Nevertheless, even "[t]his allegedly altered Criminal Trespass Notice comported with Officer Lewandowski's training." (*Id.* at 9, citing Undisputed Fact No. 15.) In his training, Officer Lewandowski has been advised to tell "all people who are issued with a Notice [of Trespass] that they are trespassing if they return to ***any*** of the store locations." (*Id.*, citing Undisputed Fact No. 16.)

Additionally, "[Mr.] Davidson told Officer Lewandowski that [Mr. Douglass] had also been issued a Criminal Trespass Notice for the Lomas Target in Albuquerque." (*Id.*, citing Undisputed Fact No. 13.) Mr. Davidson advised Officer Lewandowski that Detective Velarde had been involved in the case of the Lomas Target store. (*Id.*) Officer Lewandowski then spoke with Detective Velarde, who confirmed that Mr. Douglass had been issued a criminal trespass notice at the Lomas Target Store. (*Id.*, citing Undisputed Facts No. 21 and 22.) Detective Velarde

also advised Officer Lewandowski that Mr. Douglass "could be arrested on either the Albuquerque or the Rio Rancho trespass." (*Id.* at 10, citing Undisputed Facts No. 23 and 24.)

With respect to his communications with Detective Velarde, Officer Lewandowski urges that he could rely on the information that Detective Velarde gave him in determining probable cause under the "collective knowledge doctrine." (Doc. 32 at 10.) The doctrine operates in two situations. First, in "horizontal" collective knowledge situations, where "a number of individual law enforcement officers have pieces of the probable cause puzzle, but no single officer possesses information sufficient for probable cause[,] the officers can "pool[] their collective knowledge to meet the probable cause threshold." *See United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008). Second, in "vertical" collective knowledge situations, where one officer "instructs another officer to act, but does not communicate the corpus of information known to the first officer that would justify the action[,]" probable cause exists where the first officer "had the requisite level of suspicion[.]" (Doc. 32 at 10–11.) (citing and quoting *Chavez*, 534 F.3d at 1345 and *United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1227 (10th Cir. 2008).

Alternatively, Defendants City of Albuquerque and Officer Lewandowski argue that Officer Lewandowski had probable cause to arrest Mr. Douglass for shoplifting under N.M.S.A. § 30-16-20 (2015)—an argument that, as discussed further below, Mr. Douglass does not dispute. (Doc. 32 at 12). They urge that even if Officer Lewandowski only had probable cause to arrest Mr. Douglass for shoplifting—and did not have probable cause to arrest him for commercial burglary—Officer Lewandowski and the City of Albuquerque did not violate Mr. Douglass's constitutional rights. (*Id.*)

Specifically, Defendants argue that under Tenth Circuit precedent, "[a] police officer's subjective reason for making the arrest need not be the criminal offense as to which the known

facts provide probable cause." (*Id.* (citing *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006).) In other words, "[a]n arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as the circumstances, viewed objectively, justify the arrest." (*Id.* (citing *Apodaca*, 443 F.3d at 1289).)

### C.  Mr. Douglass's Arguments Against Qualified Immunity

Because Defendants raised the defense of qualified immunity, Mr. Douglass has the burden of pleading facts showing that (1) Officer Lewandowski "violated a statutory or constitutional right, ***and*** (2) that the right was 'clearly established' at the time of the challenged conduct." *Al-Kidd*, 563 U.S. at 735 (quoting *Harlow*, 457 U.S. at 818) (emphasis added).

Mr. Douglass argues that several of the "undisputed material facts" upon which Defendants rely are "misleading[,]" "incomplete[,]" or "misstate[] evidence[.]" (Doc. 39 at 1–3.) He argues, for example, that Officer Lewandowski "did not look at the Rio Rancho no trespass notice the way he was supposed to and did not know if he noticed relevant problems with it." (*Id.* at 1–2.) He also argues that the fact that Detective Velarde did not personally remember having arrested Mr. Douglass in a separate shoplifting case impinges on several of the facts that Defendants presented as undisputed. (*Id.* at 2–3.)

The thrust of Mr. Douglass's legal argument against qualified immunity, however, rests on his view that "[t]here is no binding authority supporting the claim that the law allows [Officer] Lewandowski to arrest John for commercial burglary because he had probable cause to arrest him on petty misdemeanor shoplifting." (*Id.* at 8.)

As discussed below, Mr. Douglass's view is wrong. While Mr. Douglass correctly describes the rule for probable cause under Fourth Amendment case law—that a warrantless

arrest is unconstitutional under the Fourth Amendment unless it is supported by probable cause (*Id.* at 10–12)—he misapprehends jurisprudence defining what suffices as probable cause for arrest.

### D. Defendants City of Albuquerque and Officer Lewandowski are shielded by qualified immunity because Mr. Douglass has not shown that his constitutional rights were violated.

All of Mr. Douglass's claims against the City of Albuquerque and Officer Lewandowski rest on a showing that Defendants did not have probable cause to arrest Mr. Douglass. The Malicious Prosecution (Count VI) and Malicious Abuse of Process (Count VII) claims are treated as the same cause of action and both require probable cause. *See Novitsky v. City Of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007) (One of the five "elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim" is "(3) there was no probable cause to support the original arrest, continued confinement, or prosecution[.]"); *DeVaney*, 953 P.2d at 283, 287 (New Mexico has consolidated the torts of malicious abuse-of-process and malicious prosecution into a single tort. "[A] malicious-abuse-of-process plaintiff attempting to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim.").

"The claims of false arrest, false imprisonment, and malicious prosecution must be premised on a lack of probable cause." *Hoffman v. Martinez*, 92 F. App'x 628, 631–32 (10th Cir. 2004) ("*See State v. Johnson*, [930 P.2d 1148] . . . (N.M. 1996) (stating that a warrantless arrest by a police officer with probable cause to believe that an offense has been committed does not become unlawful if the arrestee is later found to be innocent); *Weststar Mortgage Corp. v. Jackson*, [61 P.3d 823] (N.M. 2002) (stating that a judicial determination to bind a plaintiff over

for a criminal trial constitutes prima facie evidence of the existence of probable cause for detention); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (stating that lack of probable cause is an essential element of malicious . . . prosecution in New Mexico).").

Here, there is no question that under New Mexico state law, Officer Lewandowski had probable cause to arrest Mr. Douglass for shoplifting. Indeed, after being advised of his Miranda rights, Mr. Douglass admitted to having shoplifted at Target. *See* N.M.S.A. § 30-16-20 (among other acts, shoplifting may consist of "(1) willfully taking possession of merchandise with the intention of converting it without paying for it" or "(2) willfully concealing merchandise with the intention of converting it without paying for it"). Under New Mexico state law, Officer Lewandowski was permitted to arrest Mr. Douglass without a warrant because he had probable cause to believe that Mr. Douglass had shoplifted. N.M.S.A. § 30-16-23 ("Any law enforcement officer may arrest without warrant any person he has probable cause for believing has committed the crime of shoplifting.").

Defendants City of Albuquerque and Officer Lewandowski argue that Officer Lewandowski had probable cause to arrest Mr. Douglass for both commercial burglary and shoplifting. (Doc. 32 at 7–13.) Moreover, they urge that based only on the existence of probable cause to arrest Mr. Douglass for shoplifting, they are protected under the doctrine of qualified immunity and the Court should grant qualified immunity to them as to all of Mr. Douglass's claims. (Doc. 32 at 13.) The Court agrees and does not need to reach the question of whether Officer Lewandowski had probable cause to arrest Mr. Douglass for commercial burglary.

The United States Supreme Court addressed a similar question in *Devenpeck v. Alford*: "whether an arrest is lawful under the Fourth Amendment when the criminal offense for which there is probable cause to arrest is not 'closely related' to the offense stated by the arresting

officer at the time of arrest." 543 U.S. 146, 148 (2004). In *Devenpeck*, a state patrol officer stopped a man whom he suspected of having impersonated a police officer and interrogated him. Sergeant Devenpeck arrived on the scene shortly and inquired about the man's "wig-wag headlights[.]" While Sergeant Devenpeck questioned the man, he noticed a tape recorder with the record buttons depressed. Sergeant Devenpeck believed that the man had been recording their conversation and also incorrectly believed that the recording violated the state's Privacy Act. Sergeant Devenpeck then ordered the state patrol officer to take the man to jail. At booking, the man was charged with violating the State Privacy Act and issued with a ticket for his flashing headlights. The state trial court later dismissed both charges. *Id*. at 148–51. The Supreme Court reasoned that an officer's subjective state of mind is not determinative of whether an arrest violated the Fourth Amendment:

> Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. *See Whren v. United States,* 517 U.S. 806, 812–813 . . .  (1996) (reviewing cases); . . . *Arkansas v. Sullivan,* 532 U.S. 769. . . (2001) *(per curiam).* That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, "'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" *Whren*, *supra*, at 813 . . . (quoting *Scott v. United States,* 436 U.S. 128, 138, . . . (1978)). "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Whren, supra,* at 814.

*Id*. at 153. The Court rejected the Fourth Amendment challenge, arguing that "[t]hose are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." *Id.* at 155.

Here, all parties agree that there was probable cause to arrest Mr. Douglass for shoplifting. Under New Mexico statute, Officer Lewandowski was permitted to "arrest without warrant" because "he ha[d] probable cause for believing [Mr. Douglass] ha[d] committed the

crime of shoplifting." N.M.S.A. § 30-16-23. Under *Devenpeck*, regardless of whether Officer Lewandowski thought he was arresting Mr. Douglass for commercial burglary, Mr. Douglass's Fourth Amendment rights were not violated because there was probable cause for his arrest. Unlike this Court's holding that Officer Lewandowski's subjective state of mind raises a genuine dispute of material fact in support of Plaintiff's malicious abuse of process claim against Defendants Target and Davidson, *supra* I.A., here, because there was probable cause to arrest Mr. Douglass for shoplifting, Officer Lewandowski's subjective intent is immaterial as to whether Mr. Douglass's arrest violated his Fourth Amendment rights. Accordingly, because all of Mr. Douglass's claims against the City of Albuquerque and Officer Lewandowski require Mr. Douglass to show that Defendants did not have probable cause to arrest him, Mr. Douglass is unable to show that his Fourth Amendment rights were violated. Plaintiff has not shown that his statutory or constitutional rights were violated, entitling Defendants to qualified immunity. *Al-Kidd*, 563 U.S. at 735.

## CONCLUSION

Defendants Target and Davidson have failed to prove the absence of a genuine dispute of material fact of whether Davidson altered the Rio Rancho "Criminal Trespass Notice" and consequently had probable cause to file a complaint against Plaintiff for commercial burglary. Therefore, Defendants' motion for summary judgment is denied as to Counts I and II for Malicious Abuse of Process. However, the claim in Count III for Fraud and Deceit fails as a matter of law, as New Mexico law does not recognize Plaintiff's theory that he need not have relied on the misrepresentation. With respect to Count IV, summary judgment is granted with respect to the assault claim and denied with respect to the battery claim, as the there is a genuine dispute as to whether Plaintiff was detained in a reasonable manner. Finally, summary judgment is not appropriate for the claim in Count V for negligent hiring and training, as Defendants have

failed to prove the absence of genuine disputes of material facts pertaining to several of the underlying tortious claims against Davidson.

The Court grants Defendants City of Albuquerque and Officer Lewandowski's Motion for Summary Judgment on the basis of qualified immunity because Mr. Douglass did not show the first prong of qualified immunity—that Defendants violated a constitutional or statutory right—and dismisses all of Mr. Douglass's claims (Counts VI–X) against the City of Albuquerque and Officer Lewandowski.

**IT IS THEREFORE ORDERED** that

1. Defendants Target Corporation and Christopher Davidson's Opposed Motion for Summary Judgment (Doc. 34) is **GRANTED IN PART AND DENIED IN PART**, as follows: summary judgment is granted as to Count III and the assault claim in Count IV, and denied as to Counts I, II, V, and the battery claim in Count IV. Count III and the assault claim in Count IV are hereby dismissed.

2. Defendants City of Albuquerque and Kamil Lewandowski's Opposed Motion for Summary Judgment (Doc. 32) is **GRANTED**. Counts VI–X are hereby dismissed.

DATED this 30th day of March, 2017.

_____
MARTHA VÁZQUEZ
United States District Court Judge

HOUSTON ROSS
*Attorney for Plaintiff*

JOSH A. HARRIS
*Attorney for Defendants Target Corporation and Christopher Davidson*

JESSICA LYNN NIXON
TRISHA A. WALKER
*Attorneys for Defendants City of Albuquerque and Kamil Lewandowski*